CALOVECCHI v MICHIGAN

Docket No. 110091. Argued December 8, 1999 (Calendar No. 5). Decided
April 18, 2000.

Ronald F. Calovecchi, a state trooper, sought worker's compensation
for a mental injury incurred as a result of acts of discipline
imposed by his employer, the Michigan State Police. A magistrate
denied benefits on the basis of *Robinson v Chrysler Corp*, 139 Mich
App 449 (1984), reasoning that the plaintiff's change in employment
status could not, as a matter of law, produce an injury arising out
of and in the course of employment. The magistrate made no find-
ing regarding whether the plaintiff had sustained a mental injury.
The Worker's Compensation Appellate Commission affirmed. The
Court of Appeals, McDONALD, P.J., and MURPHY and M. F. SAPALA, JJ.,
reversed and remanded in an opinion per curiam, explaining that
*Robinson* does not extend to an act of discipline that is not
intended to end employment. 223 Mich App 349 (1997) (Docket No.
185345). The Supreme Court initially denied leave to appeal, 459
Mich 881 (1998), but, on reconsideration, granted the defendant's
application, specifically directing the parties to address the applica-
bility of *Robinson*. 460 Mich 854 (1999).

In a unanimous opinion by Justice CORRIGAN, the Supreme Court
*held*:

*Robinson* does not support preclusion of compensation for
mental injuries caused by acts of discipline that do not sever an
employment relationship.

1. To qualify for compensation under the WDCA, a person must
prove a personal injury arising out of and in the course of employ-
ment. The phrase "arising out of and in the course of" describes the
necessary connection between the personal injury and the employ-
ment. *Robinson* held that a mental injury that arises from the loss
of employment cannot logically arise out of and in the course of
employment. Because the plaintiff's injury in *Robinson* stemmed
from the mere fact of termination, and not from the manner of ter-
mination, *Robinson* did not categorically remove the act of termi-
nation from the list of possible causes of compensable injury. At
most, *Robinson* stands for the proposition that mental injuries aris-

ing solely from the cessation of employment are not compensable under subsection 301(1).

2. *Robinson* does not logically extend to the circumstances of this case. The plaintiff still remained in the defendant's employ. His placement on paid administrative leave did not sever the employment relationship. Rather, the plaintiff's employer took official action during the course of the plaintiff's employment, and the plaintiff alleged a mental injury arising from that action.

3. Acts of employer-imposed discipline are a predictable part of the working environment. Their removal as a possible cause of compensable injury would be inconsistent with the longstanding interpretation of the worker's compensation act.

Affirmed and remanded.

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *Deborah A. Deprez*), for the plaintiff-appellee.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assistant Attorney General, for the defendant-appellant.

Amici Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers Association.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for DaimlerChrysler Corporation.

CORRIGAN, J. We granted leave in this worker's compensation case to determine whether *Robinson v Chrysler Corp*, 139 Mich App 449; 363 NW2d 4 (1984), which held that mental injuries caused by termination from employment are not compensable under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, should also preclude compensation for mental injuries caused by acts of discipline that do not sever the employment

relationship. Because we conclude that *Robinson* does not support such a result, we affirm the judgment of the Court of Appeals and remand the case to the Worker's Compensation Appellate Commission for consideration of defendant's remaining argument.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Plaintiff, a twenty-two-year veteran of defendant Michigan State Police, was the subject of an internal affairs investigation in the fall of 1989. The investigation resulted from allegations that plaintiff had drawn his gun on his stepson in July 1989 and that he had physically assaulted his wife in September 1989. On the basis of the internal affairs report, a State Police psychologist recommended to the officer in charge of state police personnel that plaintiff be relieved of his badge and gun and that he be required to undergo an independent psychological evaluation. The psychologist was concerned that plaintiff might not be "emotionally fit" to carry a weapon and that he might misuse a department-issued firearm.

On the morning of November 17, 1989, plaintiff was called to a meeting with a group of superior officers at his station and presented with a letter from the personnel officer. The letter stated that because of a "pattern of recent misconduct currently being investigated by the employer" plaintiff was to be relieved of his badge and gun and temporarily placed on paid administrative leave. Defendant took this action under article 27(3)(g) of the collective bargaining agreement between defendant and the Michigan

State Police Trooper's Association.[1] Plaintiff's superiors told him that he could return to work as early as the next day if he met with a psychologist or psychiatrist of his choosing and agreed to counseling. Plaintiff felt totally disgraced when defendant took his badge and gun. He also claimed that he was embarrassed because he had to walk past several of his coworkers after leaving the room in which the meeting was held.

The incidents underlying the internal investigation never resulted in criminal charges or internal disciplinary action. Although plaintiff's wife had filed a complaint with the Eaton County Sheriff's Department, the Eaton County prosecutor denied her request for an assault and battery warrant in October 1989 after concluding that her version of the incident was not credible. Similarly, on November 28, 1989, the internal charges against plaintiff were dropped with the explanation that they were not sustained. The personnel officer acknowledged that the internal charges were not sustained because "the proofs [were] not there."

---

[1] Article 27(3)(g) provides as follows:

Nothing herein shall prevent the Employer, after consultation with the employee, from requiring an employee to undergo psychiatric or psychological or medical examination or treatment when there is a reasonable belief that such examination or assistance is necessary for the continued employment of the employee or to assist in determining if such continued employment is appropriate. The employee shall be given the opportunity of conferring with the Association representative, prior to said examination. However, such psychiatrist or psychologist or physician will be an "outsider," i.e., not Department-retained/employed personnel. All such costs shall be paid by the Employer, and any medical findings or recommendations therefrom shall be provided to the Employer. Abuse of this provision by the Employer shall be grievable.

Plaintiff never returned to work after being placed on administrative leave. Instead, he continued to receive wages and benefits until he was formally placed on disability retirement in May 1990.

In December 1989, plaintiff filed a claim for worker's disability compensation benefits, alleging that he incurred a mental disability as a result of defendant's decision to take his badge and gun and place him on administrative leave. After a hearing, the magistrate found that plaintiff was "completely taken back" and that he "felt 'completely humiliated'" by the November 17, 1989, meeting. The magistrate also found that plaintiff's reaction in these circumstances was "reasonable." Nevertheless, the magistrate denied benefits under the authority of *Robinson, supra,* reasoning that plaintiff's change in employment status could not, as a matter of law, produce an injury arising out of and in the course of employment. The magistrate made no finding regarding whether plaintiff had sustained a mental injury.

On appeal, the WCAC affirmed the magistrate's decision. It concluded that the magistrate had correctly applied *Robinson, supra,* when it found that "the November 17, 1989, meeting [could not] substantiate an injury arising out of and in the course of plaintiff's employment."[2] 1995 Mich ACO 847, 850. The WCAC explained its decision as follows:

---

[2] In addition to arguing that the magistrate was correct in its assessment of *Robinson,* the defendant also argued that plaintiff was not entitled to benefits because the alleged mental injury was not "contributed to or aggravated or accelerated by the employment in a significant manner," and that it arose out of "unfounded perceptions" of reality rather than "actual events of employment." MCL 418.301(2); MSA 17.237(301)(2). Because the WCAC affirmed the decision of the magistrate on the basis of *Robinson,* it did not reach defendant's subsection 301(2) argument.

> Even if plaintiff were found to be disabled, we believe the Magistrate was correct in determining that such disability would have been caused by his administrative leave rather than events arising out of and in the course of his employment with defendant. [*Id.*]

The Court of Appeals granted plaintiff's application for leave to appeal and reversed the decision of the WCAC. 223 Mich App 349; 566 NW2d 40 (1997). The panel explained that *Robinson* was based on the "simple proposition that an act of ending employment cannot be construed as being in the course of employment." *Id.* at 353. That proposition, it reasoned, "does not naturally extend to an act of discipline that is not intended to end the relationship." *Id.* Accordingly, the Court of Appeals remanded the matter to the Board of Magistrates for further proceedings. *Id.* at 353-354.

Defendant then sought leave to appeal, which this Court initially denied over Justice BOYLE's dissent. 459 Mich 881 (1998). On reconsideration, we granted defendant's application and specifically directed the parties to address the applicability of *Robinson*. 460 Mich 854 (1999).

## II. STANDARD OF REVIEW

Whether the *Robinson* rule precludes an award of worker's compensation benefits on the basis of plaintiff's claim and the undisputed factual findings of the magistrate and the WCAC is a question of law. Michigan's appellate courts have the power to review questions of law involved in any final order of the WCAC. MCL 418.861; MSA 17.237(861), MCL 418.861a(14); MSA 17.237(861a)(14). We review such questions of

law de novo. *Oxley v Dep't of Military Affairs*, 460 Mich 536, 540-541; 597 NW2d 89 (1999).

III. STATUTORY ANALYSIS

To qualify for compensation under the WDCA, a person must prove "a personal injury arising out of and in the course of employment." See MCL 418.301(1); MSA 17.237(301)(1); *Haske v Transport Leasing, Inc, Indiana*, 455 Mich 628, 641; 566 NW2d 896 (1997); *Simkins v General Motors Corp (After Remand)*, 453 Mich 703, 710; 556 NW2d 839 (1996). The phrase "arising out of and in the course of" describes the necessary connection between the personal injury and employment.[3] See *Simkins, supra* at 712-713, n 14, citing Welch, Worker's Compensation in Michigan: Law & Practice (3d ed), § 4.1, pp 4-1 to 4-2. This Court has sometimes described the phrase as containing two parts, with the "arising out of" component expressing the need for a causal connection to an employment risk and the "in the course of" component expressing the need for a connection in time, place, and circumstances. See, e.g., *Simkins, supra* at 712-713, n 14, citing *Appleford v Kimmel*, 297 Mich 8, 12; 296 NW 861 (1941). As we observed in *Simkins*, however, Michigan courts have generally viewed the phrase as a whole to define the injury-employment connection.

In *Robinson, supra*, the Court of Appeals held that "[a] mental injury which arises from the *loss* of employment simply cannot logically 'aris[e] out of and in the course of employment.'" 139 Mich App 451. In so doing, the Court of Appeals affirmed the

---

[3] The term "personal injury" may encompass mental injuries as well as physical injuries. See MCL 418.401(2)(b); MSA 17.237(401)(2)(b).

Worker's Compensation Appellate Board's (WCAB) "longstanding interpretation of the act holding that mental injury caused by a termination of employment [was] not compensable" under the WDCA. *Id.* The factual recitation in *Robinson* was brief. Sometime after the plaintiff was discharged from his employment with the defendant, he was hospitalized as a result of a mental condition. *Id.* at 450. The WCAB found that the plaintiff's disability "arose out of the termination of his employment rather than due to his employment." *Id.* On the basis of this finding, the Court of Appeals affirmed the WCAB's determination that subsection 301(1) of the WDCA precluded the payment of benefits to the plaintiff.

The rationale for *Robinson* becomes somewhat clearer when considered in light of the underlying WCAB decision, in which the WCAB noted that the plaintiff's alleged mental injury stemmed from the "fact of termination" and "not even the way it was done." 1983 WCABO 670, 678. Because the plaintiff's injury stemmed from the mere fact of termination, and not from the manner of termination, we disagree with a reading of *Robinson* that would *categorically* remove the act of termination from the list of possible causes of compensable injury. At most, *Robinson* stands for the proposition that mental injuries arising solely from the cessation of employment are not compensable under subsection 301(1).

We need not determine whether *Robinson* was correctly decided because *Robinson* does not logically extend to the circumstances of this case. It is undisputed that plaintiff still remained in defendant's employ after a meeting at which he was placed on administrative leave. He continued to receive wages

and benefits and was welcome to return to active employment as soon as he sought independent psychological counseling. Unlike the fact of termination in *Robinson*, plaintiff's placement on paid administrative leave in this case did not sever the employment relationship. Rather, plaintiff's employer took official action *during* the course of plaintiff's employment and plaintiff alleged a mental injury arising out of that action. Accordingly, plaintiff clearly satisfied the "arising out of and in the course of" requirement of MCL 418.301(1); MSA 17.237(301)(1).

Defendant contends that our failure to extend *Robinson* to preclude the payment of compensation for mental injuries caused by acts of discipline (and other employer actions) that do not sever the employment relationship would have the "unfortunate result" of "encourag[ing] employers to terminate the employment relationship rather than to impose less severe discipline." This prediction may or may not come true.[4] These policy questions are properly directed toward the Legislature rather than to this Court. Our duty is to construe the text of the statute before us, not to reach the policy result we judges think preferable. See *Jennings v Southwood*, 446 Mich 125, 142; 521 NW2d 230 (1994), quoting *City* of *Lansing v Lansing Twp*, 356 Mich 641, 648; 97 NW2d 804 (1959) (" 'The duty of the Court is to interpret the statute as we find it. The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere' ").

---

[4] Certainly negative practical and legal considerations are involved with the termination of an employee that do not arise when less severe disciplinary action is taken.

Given the plain language of subsection 301(1), we cannot extend *Robinson* to this case on the ground that it would be "bad policy" to do otherwise. To do so, we would have to conclude that mental injuries stemming from acts of employer discipline (and other similar employer acts) do not, as a matter of law, "aris[e] out of and in the course of employment." Justice TALBOT SMITH, commenting on the concept of "course of employment" under the WDCA explained that an injury is "compensable" if it "results from the work itself, or from the stresses, the tensions, the associations, of the working environments, human as well as material . . . ." *Crilly v Ballou*, 353 Mich 303, 326; 91 NW2d 493 (1958). Certainly, acts of employer-imposed discipline are a predictable part of the working environment. Accordingly, their removal as a possible cause of compensable injury would be inconsistent with our longstanding interpretation of subsection 301(1) of the WDCA. *Id.*

For these reasons, we affirm the Court of Appeals determination that the WCAC erred in affirming the magistrate on the basis of the rule announced in *Robinson, supra.*

## IV. UNPRESERVED ARGUMENTS

Finally, defendant makes two additional arguments that are not properly before this Court. First, it argues that a mental injury stemming from an employment action taken in response to conduct unrelated to the plaintiff's employment (i.e., plaintiff's domestic situation) cannot be an injury "arising out of and in the course of employment" under subsection 301(1). Second, defendant cites *Los Angeles v Workers' Compensation Appeals Bd*, 119 Cal App 3d 355; 174 Cal Rptr

25 (1981), for the proposition that a police officer cannot transform a "criminal investigation" against him into a worker's compensation claim simply because he happens to work for the investigative body.

Whatever the merit of these legal arguments, they were not raised before or addressed by the WCAC.[5] Accordingly, we lack the statutory authority to consider them in this appeal. Subsection 861a(14) of the WDCA provides:

> The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. *The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission,* if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules. [Emphasis added; see also MCL 418.861; MSA 17.237(861).]

The clear implication of this subsection is that this Court lacks the power to address legal questions that have not been raised before or addressed by the WCAC.

We affirm the judgment of the Court of Appeals and remand to the WCAC for consideration of defendant's subsection 301(2) argument.[6]

---

[5] Defendant made no arguments before the WCAC that were based in any way on the underlying reasons for its decision to place plaintiff on paid administrative leave. Similarly, defendant never suggested that plaintiff should be denied benefits on the ground that he was a police officer under criminal investigation.

[6] After oral argument, defendant advised this Court that, despite our decision to grant leave on reconsideration, the magistrate has conducted further proceedings on remand from the Court of Appeals. In the course of those proceedings on remand, the magistrate determined that plaintiff had satisfied the requirements of subsection 301(2). In its consideration of defendant's subsection 301(2) argument on remand from *this* Court, the WCAC shall be free to consider the findings of fact and conclusions of law

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

.

---

made by the magistrate on remand from the Court of Appeals. If the WCAC has already fully addressed those arguments on appeal from the magistrate's opinion on remand from the Court of Appeals, it need not do so again on remand from this Court. At this time, we offer no opinion regarding the effect of subsection 301(2) on plaintiff's claim.