**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 26, 2003**

TONY J. DANIEL,

    Plaintiff-Appellee,

v                                    No. 120460

DEPARTMENT OF CORRECTIONS,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE COURT

WEAVER, J.

In this case we address whether plaintiff, who was disciplined by, the Department of Corrections (his employer), for sexually harassing female attorneys, and who suffered depression as a result of the disciplinary proceedings, is barred from worker's compensation benefits pursuant to MCL 418.305. MCL 418.305 provides, "If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act." We hold that MCL 418.305 precludes benefits in this case and,

therefore, we reverse the judgment of the Court of Appeals and reinstate the Worker's Compensation Appellate Commission's (WCAC's) order denying plaintiff benefits.

I

Plaintiff worked as a probation officer with defendant Department of Corrections beginning in 1984. His employment required him to attend probation violation hearings held in circuit court several times a month to interact with defense attorneys representing probationers.

In February 1995, a female defense attorney filed a complaint with plaintiff's immediate supervisor alleging that plaintiff sexually harassed her in August 1994 and February 1995. The attorney testified that it was plaintiff's failure to take her rejection of his advances seriously that prompted her to file her complaint.[1] The attorney's complaint was soon followed by allegations of sexual harassment by plaintiff from

_____

[1]The attorney alleged that in August 1994 plaintiff obscenely propositioned her. She testified that when she rejected plaintiff's advances, he told her that they would have to be "discreet" since he was married with children. Then, in the middle of a probation hearing that day, he showed her a note stating that she would have to lose ten pounds first. The attorney testified that she and her boss successfully arranged her schedule to avoid further contact with plaintiff. However, in February 1995, she was again scheduled with plaintiff. The attorney testified that plaintiff doggedly pursued his previous proposition. When rejected, plaintiff told the attorney that she'd need to lose twenty pounds and said to her, "[y]ou want me; you know you want me."

2

three other female defense attorneys.[2]

Plaintiff's supervisor initiated an investigation into the complaints. Over the following months, she interviewed the attorneys and other witnesses. When questioned, plaintiff denied all the allegations. At the close of her investigation, plaintiff's supervisor recommended that a disciplinary conference be held regarding five separate counts of sexual harassment.

A disciplinary conference was held on June 20, 1995. Plaintiff continued to deny the allegations. On the advice of his union representative, however, plaintiff offered nothing in his own defense. The plaintiff was informed that the possible discipline ranged from a written reprimand to dismissal. At the conclusion of the conference, the presiding official found "a strong basis" on which to conclude that plaintiff violated Michigan Department of Corrections work rules as described in all five counts.[3] Ultimately, plaintiff

---

[2]It was alleged that plaintiff told one attorney that he was attracted to Caucasian women and that he was turned on by a woman's thighs. It was alleged by another that plaintiff asked if she would date a black man. A third attorney alleged that when she was pregnant, plaintiff had asked her if she was having a girl or boy. When she replied that she was having a girl, she alleged that plaintiff said, "too bad, a boy means you had deep penetration."

[3]The work rules at issue prohibit "[s]peech, action, gesture or movement that causes physical or mental intimidation, humiliation, or harassment," and "conduct of an employee which may adversely affect the reputation of the Department . . . ."

was disciplined for the two counts of sexual harassment arising from the August 1994 and February 1995 incidents. He was suspended for ten days without pay.[4]

After his return to work in August 1995, plaintiff testified that he felt harassed by both his immediate supervisor and the defense attorneys who had accused him of sexual harassment. He felt "out of control," and, on January 27, 1996, began being treated by psychologist Daniel DeWitt. Dr. DeWitt diagnosed plaintiff as suffering from depression caused by the disciplinary investigation and proceedings as well as the subsequent stresses at work. As a result, plaintiff began a leave of absence in February 1996.

In March 1996, Dr. DeWitt felt that plaintiff could work again, but at a different job for a different supervisor. Plaintiff submitted a request for reasonable accommodation in the form of a transfer to another part of the Department of Corrections. His request was rejected by the department's Americans with Disabilities Act Coordinator because plaintiff's disability was deemed temporary and not substantially limiting in nature. In June 1996, plaintiff filed a claim for worker's compensation benefits premised on a mental disability arising from the disciplinary proceedings.

---

[4]Plaintiff subsequently filed a grievance with his union, claiming the discipline was without just cause and in violation of his contractual rights. The resolution of the grievance does not appear in the record.

4

During the time leading to the trial, plaintiff saw three other doctors at the state's request.

After four days of trial between March and September of 1998, the magistrate concluded that the "discipline, and post-discipline employment events up to February 2, 1996, contributed in a significant manner to [plaintiff's] development of a disabling condition of depression, anxiety, and uncontrolled anger." The magistrate did not address MCL 418.305 or make specific findings regarding whether plaintiff's conduct was intentional and wilful or otherwise not compensable under that section. Rather, the magistrate's conclusion that plaintiff was entitled to benefits was based on the finding that plaintiff's injury arose out of his employment pursuant to *Gardner v Van Buren Public Schools*, 445 Mich 23; 517 NW2d 1 (1994), overruled in part by *Robertson v DaimlerChrysler Corp*, 465 Mich 732; 641 NW2d 567 (2002). However, the magistrate commented:

> It is clear to me that Plaintiff's problems started with his discipline for the improprieties of which he was accused. It is difficult to have much sympathy for this claimant, since he brought these troubles on himself by his own misconduct. But compensation, like the rain, falls on the just and the unjust alike.

The magistrate awarded plaintiff a closed award of worker's compensation benefits.

Defendant appealed, raising MCL 418.305 as an affirmative defense. The WCAC agreed with the essence of the magistrate's

5

finding that the plaintiff's injury was self-inflicted, but concluded that MCL 418.305, "puts up an umbrella to prevent compensation from falling on this particular 'unjust' claimant."[5]  The WCAC found that plaintiff was on notice of the rules that prohibited the conduct for which he was ultimately accused and disciplined, but had done "it anyway, in a consistent and repeated pattern over a long period of time."  The WCAC concluded that plaintiff's injury arose from his own intentional and wilful misconduct and, therefore, that MCL 418.305 precluded an award of benefits.

Plaintiff appealed and, as will be discussed below, the Court of Appeals reversed the WCAC decision in a two-to-one decision.  The Court of Appeals majority concluded that plaintiff's acts did not rise to the level of intentional and wilful misconduct contemplated by MCL 418.305.  248 Mich App 95 (2001).

In dissent, Judge O'Connell noted that "whether an individual engaged in wilful and intentional misconduct is a factual determination" and "that the Legislature, through MCL 418.861a(14), has provided the WCAC with the authority to make factual findings." 248 Mich App 109-110.  Moreover, Judge

---

[5]The WCAC is empowered to make independent findings of fact on matters where the magistrate's findings are lacking, as long as the record is sufficient for administrative appellate review and the WCAC is not forced to speculate. *Mudel v Great Atlantic & Pacific Tea Co,* 462 Mich 691, 730; 614 NW2d 607 (2000).

O'Connell noted, the WCAC's finding in this case that plaintiff engaged in wilful and intentional misconduct was conclusive and binding in the absence of fraud. *Id.* at 110, citing *Mudel, supra* at 701, 711, 712. Judge O'Connell opined "that the WCAC's conclusion that plaintiff engaged in wilful and intentional misconduct was well-grounded," 248 Mich App 110, in the record and that, therefore, the Court of Appeals was required to affirm its decision.

We granted defendant's application for leave to appeal. 466 Mich 889 (2002).

## II

We review de novo questions of law. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). Whether plaintiff's injury arose by reason of intentional and wilful misconduct as contemplated by MCL 418.305 is a question of fact. *McMinn v C Kern Brewing Co*, 202 Mich 414, 429; 168 NW 542 (1918); *Day v Gold Star Dairy*, 307 Mich 383, 390; 12 NW2d 5 (1943). On judicial review, "[t]he findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. . . ." MCL 418.861a(14).

## III

The focus of our inquiry is solely on the proper application of MCL 418.305.[6] As quoted above, MCL 418.305

---

[6]The Court of Appeals majority and dissent debated the relevance of *Calovecchi v Michigan*, 461 Mich 616; 611 NW2d 300 (continued...)

provides, "If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act."  This provision has remained essentially unchanged since it was first adopted by the Legislature in 1912 as part of the original worker's compensation legislation.  See 1912 (1st Ex Sess) PA 10, part 2, § 2.[7]

The Court of Appeals majority below divided its analysis of MCL 418.305 into two parts.  It focused first on whether plaintiff's mental injury arose "by reason of" his misconduct, and, second, on whether plaintiff's misconduct was "intentional and wilful."  We address and reject the panel majority's analysis of each of these questions.

A

"By reason of"

The panel majority first focused on what it termed the

---

[6](...continued)
(2000), to the interpretation of MCL 418.305.  In *Calovecchi,* an employee's alleged misconduct off the job was investigated, but the allegations were ultimately dismissed.  *Calovecchi* held that mental injuries caused by acts of discipline may be compensable under MCL 418.301(1), because "acts of employer-imposed discipline are a predictable part of the working environment."  *Calovecchi, supra*, p 625.  The majority and dissent speculated whether *Calovecchi* would somehow encourage employers to find employees guilty of alleged misconduct.  In response, we note that MCL 418.305 was not raised by the parties or addressed at any level in *Calovecchi* and that such policy considerations are properly left to the Legislature, not the courts.

[7]The only change has been to the word "employee," which was originally spelled "employe."

question of causation, i.e., whether plaintiff was injured "by reason of" his intentional and wilful misconduct. The majority rejected the WCAC's finding that plaintiff's injury was "the direct result of his intentional and wilful misconduct," by concluding that the question of "who started it?" was "inapposite to the intention of the WDCA." 248 Mich App 103. The majority concluded that plaintiff's injury was "too attenuated for [it] to have occurred 'by reason of' his acts," *id.*, p 102, and that plaintiff "was not injured at the time of his act," but was "injured solely because of his status as an employee . . . ." *Id.*, p 103.

To support its conclusion, the majority analogized to two cases in which fighting or horseplay between employees escalated and resulted in physical injuries. See, e.g., *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958), and *Andrews v Gen Motors Corp*, 98 Mich App 556; 296 NW2d 309 (1980).[8] Our review of those cases reveals that they do not support the panel majority's causation analysis. Indeed, neither case,

---

[8]*Crilly* involved an injury caused by employees throwing shingles and nails at one another. The Court conducted an exhaustive review of cases involving on-the-job "sportive assaults" and concluded that injuries received are not outside the realm of the course of employment and were compensable as long as they did not rise to the level of intentional and wilful misconduct. *Crilly, supra,* pp 326-327. *Andrews* involved injuries sustained during a fight between employees. The Court of Appeals affirmed the Worker's Compensation Appeal Board's award of benefits, concluding that the conduct did not involve "such a degree of 'moral turpitude' . . . so as to preclude" benefits. *Andrews, supra,* p 561.

9

nor any other we have found, addressed whether the injuries were "by reason of" misconduct pursuant to MCL 418.305. Rather, the causation inquiry in those cases, and our case law, pertains to the question whether such misconduct can be said to have *arisen out of the course of the employment* as required by MCL 418.301. See *Crilly, supra,* pp 324-327, and *Andrews, supra,* pp 558-559.[9]

Significantly, defendant no longer disputes, and the magistrate, the WCAC, and the Court of Appeals agreed, that plaintiff's mental disability arose out of and in the course of his employment pursuant to MCL 418.301(1). Thus, the majority's reliance on *Crilly* and *Andrews* was misplaced.

Moreover, we decline to impose a more direct causation requirement than that plainly expressed by the statute. "By reason of" is defined as "[b]y means, acts, or instrumentality of." Black's Law Dictionary (6th ed). As noted by the Court of Appeals dissenter, the phrase does not require that an injury arise contemporaneously with the misconduct. Rather, as stated by Judge O'Connell:

> [I]t cannot be disputed that [plaintiff's] misconduct was the starting point for the resultant

---

[9]Whether misconduct that causes an injury arose out of and in the course of employment under MCL 418.301(1) is a *preliminary* question that must be answered affirmatively before the issue whether that misconduct was "intentional and wilful" in light of MCL 418.305 is reached. See *Bischoff v American Car & Foundry Co*, 190 Mich 229, 231; 157 NW 34 (1916); *Clem v Chalmers Motor Co*, 178 Mich 340, 344-345; 144 NW 848 (1914).

10

disciplinary proceedings that ultimately caused his injury.   Had plaintiff not engaged in sexual harassment, he would not have been subjected to the disciplinary proceedings, and he would not have been suspended from his job. . . . [T]he disciplinary proceedings, from which plaintiff's mental disability arose, flowed directly and predictably from plaintiff's misconduct as surely as night follows day. [248 Mich App 115-116.]

We agree with Judge O'Connell and conclude that the record amply supports the WCAC's finding that plaintiff was injured "by reason of" his intentional and wilful misconduct. Because the magistrate failed to address the applicability of § 305 to plaintiff's claim, the WCAC acted within its authority in engaging in supplemental fact-finding and in concluding that plaintiff's injury—although it may well have arisen out of employment events—was nevertheless barred because it occurred by reason of his intentional and wilful misconduct.[10]   Therefore, as constrained by our limited judicial appellate review, we abide by the findings of fact by the WCAC. *Mudel, supra,* p 700.

B

"Intentional and Wilful"

The Court of Appeals majority next concluded that plaintiff's acts did not amount to "intentional and wilful

---

[10]Indeed, the WCAC's fact-finding in this regard is *consistent* with the magistrate's finding that plaintiff "brought these troubles on himself by his own misconduct." Therefore, we cannot agree with Justice Cavanagh, who opines in dissent that the WCAC improperly substituted its own findings for those of the magistrate.

misconduct" under MCL 418.305. The majority reasoned that plaintiff's conduct, though "voluntary, crude, and unprofessional," did not rise to "intentional and wilful misconduct" as it has been interpreted in this state. 248 Mich App 104.

Our case law has consistently distinguished "intentional and wilful misconduct" from acts of negligence and gross negligence. Benefits are awarded despite MCL 418.305 where an employee is injured by his own negligence. See, e.g., *Gignac v Studebaker Corp*, 186 Mich 574; 152 NW 1037 (1915); *Day, supra*. However, this Court has held that benefits are precluded under the statute where an employee was injured by conduct of a quasi-criminal nature. *Fortin v Beaver Coal Co,* 217 Mich 508, 510; 187 NW 352 (1922). *Fortin* described "quasi-criminal" conduct as "involving the intentional doing of something with knowledge that it is dangerous and with wanton disregard of consequences . . . ." *Id.*

Although plaintiff denies that he made the comments of which he is accused, his denials were not believed at any level reflected in the record. At the disciplinary conference, "a strong basis" was found to support the allegations. The magistrate found that plaintiff had "brought these troubles on himself by his own misconduct." The WCAC found that "[p]laintiff knew what he was doing was wrong" and yet he persisted. Even the Court of Appeals majority called

12

the plaintiff's behavior "voluntary, crude, and unprofessional." 248 Mich App 104. Nevertheless, the majority decided that plaintiff's behavior did not rise to a level of moral turpitude that could be called "intentional and wilful." *Id.*

In our view, the WCAC's conclusion that plaintiff's misconduct was voluntary is amply supported by the record. His repeated acts of sexual harassment were well beyond the realm of mere negligence or gross negligence. That said, it has long been understood that the question whether misconduct is "intentional and wilful" is one of fact. *McMinn, supra,* p 429, and *Day, supra,* p 390.[11] On judicial review, "[t]he findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive." *Mudel, supra,* p 700. Thus, the Court of Appeals panel majority's rejection of the WCAC's findings regarding whether plaintiff's misconduct was "intentional and wilful" and its substitution of its own fact-finding on the issue does not comport with its

---

[11]In *Crilly, supra,* p 327, we noted:

> [T]his exclusion of acts of a degree of moral turpitude, it will be observed, is by the legislature itself, not a judicial retrogression to principles of tort. *Further than this in definition we do not attempt to go.* The precise future line of demarcation will be marked out, in the traditional manner, *by the case-to-case decision.* [Emphasis supplied.]

13

limited judicial appellate review.  We, therefore, reverse the judgment of the Court of Appeals.

C

We note one final disagreement with the panel majority's reasoning.  Regarding whether the plaintiff knew his conduct was prohibited, the panel majority found persuasive the fact that, although plaintiff's comments were alleged to have been made over several years, he "suffered no adverse consequences from his behavior" until 1995.  248 Mich App 103.  It reasoned that "[p]laintiff's history of conduct in this case indicates that the rule was not strictly enforced and there are no facts in the record indicating otherwise." *Id.,* p 105.  While this Court has concluded that MCL 418.305 does not operate to preclude benefits where an employee was injured while violating a work rule that had not been enforced by the employer, see, e.g., *Rayner v Sligh Furniture, Co*, 180 Mich 168; 146 NW 665 (1914), the record in this case reflects that plaintiff's immediate supervisor had conducted several investigations into other alleged violations of work rules by other employees during her supervisory tenure.  More critically, that plaintiff's accusers did not file formal complaints triggering the enforcement process is not demonstrative of the defendant's enforcement, or lack thereof, of workplace rules.

IV

14

For the reasons stated, we reverse the judgment of the Court of Appeals and reinstate the WCAC order denying benefits to this plaintiff.

Elizabeth A. Weaver
Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

TONY J. DANIEL,

    Plaintiff-Appellee,

v

                         No. 120460

DEPARTMENT OF CORRECTIONS,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I respectfully disagree with the majority's conclusion that plaintiff is precluded from receiving worker's compensation benefits for his mental injury. The majority relies on the intentional and wilful misconduct exclusion in MCL 418.305 to hold that, though plaintiff's depression was a result of defendant's disciplinary proceedings, such disciplinary proceedings were necessitated by plaintiff's intentional and wilful misconduct, i.e., plaintiff's sexual harassment of female attorneys. I would affirm the decision of the Court of Appeals and award benefits to plaintiff.

I agree with the Court of Appeals majority that the

connection between plaintiff's acts and his injury is too attenuated for the injury to have occurred "by reason of" his acts. The majority rejects this position, fearing it would impose a requirement that the injury arise contemporaneously with the employee's misconduct. However, saying that plaintiff's acts of sexual harassment and his injury are "too attenuated," does not necessarily impose a requirement that the injury arise contemporaneously with the misconduct.

In this case, plaintiff's injury followed not only plaintiff's own conduct, but also action taken by defendant. One must consider not only the amount of time that elapsed between the employee's conduct and the injury, but also the events that occurred during that time. The disciplinary proceedings conducted by defendant in this case occurred after plaintiff's misconduct, but before his mental injury. Therefore, one could conclude, as the magistrate did, that the discipline was the cause of plaintiff's mental injury.

Additionally, the Worker's Compensation Appellate Commission improperly substituted its own findings for those of the magistrate. The magistrate found that "[p]laintiff's problems started with his discipline," and that "plaintiff's discipline and post-discipline employment events up to February 2, 1996, contributed in a significant manner to" plaintiff's mental injury. Findings of fact by the magistrate are to be considered conclusive by the WCAC if supported by

2

"competent, material, and substantial evidence on the whole record."  MCL 418.861a(3); *Holden v Ford Motor Co*, 439 Mich 257, 261; 484 NW2d 227 (1992).

The WCAC majority found that the record supported the magistrate's finding that defendant's discipline of plaintiff, which followed the sexual harassment, was the direct cause of plaintiff's injury.  Its review should have ended there, but the WCAC improperly replaced the magistrate's finding that plaintiff's injury was caused by defendant's disciplinary proceedings with its own finding that plaintiff's injury was caused by his intentional and wilful conduct.  The WCAC exceeded the scope of its review; therefore, the magistrate's finding that plaintiff's injury was the result of the disciplinary proceedings should be upheld.

Because I would affirm the judgment of the Court of Appeals and reinstate plaintiff's benefits, I, respectfully, dissent.

Michael F. Cavanagh
Marilyn Kelly

3