WEAVER, J.
(dissenting). I dissent from the decision of the majority of four (Chief Justice TAYLOR and Justices Corrigan, Young, and Markman) to reverse the judgment of the Court of Appeals on the ground that the plaintiffs refusal to attend a mandatory employee event constituted “intentional and wilful misconduct” under MCL 418.305, thereby barring her recovery of benefits under the Worker’s Disability Compensation Act, MCL 418.101 et seq.
The majority of four, in reversing the decisions reached by the magistrate, the Workers’ Compensation Appellate Commission (WCAC), and the Court of Appeals, has supplanted the very well-reasoned findings reached by the aforementioned entities with its own nonsensical conclusion that the “intentional and wilful misconduct” engaged in by the plaintiff in this case was equivalent to the “intentional and wilful misconduct” that occurred in Daniel v Dep’t of Corrections, 468 Mich 34; 658 NW2d 144 (2003). Having authored Daniel, I *287 take issue with the majority’s unfounded conclusion and instead agree that the “plaintiff’s decision to not attend the Martin Luther King celebration in Dear-born . . . was ‘a far cry’ from the probation officer’s sexual harassment in Daniels [sic].”[1] Consequently, I agree with the decision reached by the Court of Appeals affirming the magistrate and WCAC’s award of benefits to the plaintiff.
A brief recitation of the facts illustrates the distinction between the employee misconduct that occurred in Daniel[2] and the employee action that occurred here. The plaintiff, Patricia D. Brackett, worked for defendant Focus Hope in Detroit. Focus Hope’s mission statement emphasizes the importance of following the teachings of Martin Luther King, Jr. During her hiring interview, Ms. Brackett was advised that she would be required to attend a Focus Hope event on Martin Luther King, Jr., Day. Because the Martin Luther King Day celebrations had always been held in Detroit, Ms. Brackett had no reason to believe at the time she was hired that she would be required to attend the event in the city of Dearborn. However, in 2002, the year that Ms. Brackett was employed by Focus Hope, the director, Eleanor Josaitis, decided to hold the event not in Detroit, but in Dearborn, in an effort to promote Focus Hope’s goal of racial reconciliation. Ms. Brackett testified that the decision was a topic of open discussion among Focus Hope employees. Approximately 50 to 60 *288 Focus Hope employees, including Ms. Brackett, who is African-American, believed the event should not be held in Dearborn.
Speaking personally about her objections to holding the event in Dearborn, Ms. Brackett testified that she voiced her concerns to her immediate supervisor given her own family’s past experience in the community. Indeed, evidently the Focus Hope director’s desire to hold the event in Dearborn, instead of Detroit, was based in part on her decision to expand the scope of Focus Hope’s policy by carrying Focus Hope’s message into a new realm, an area that Ms. Brackett testified was “not a good fit” for her.
While the majority equates the “misconduct” that occurred here with the sexual harassment misconduct that occurred in Daniel, it is not even clear that there was a well-established work rule to hold the event in Dearborn, as opposed to Detroit. Therefore, it cannot be said that Ms. Brackett violated a well-established work rule.
Moreover, the “harm” that Ms. Brackett suffered in this case was not caused by the initial response by her supervisor, but by the director’s harsh personal censure of Ms. Brackett. Specifically, Ms. Brackett notified her immediate supervisor that she objected to attending the event in Dearborn and her supervisor told her she would be docked one day’s pay for her refusal to attend. Ms. Brackett accepted this reprimand. It was not until after the Dearborn event that Ms. Josaitis harshly censured Ms. Brackett for refusing to attend. Ms. Brackett asserts that Ms. Josaitis and she had a “one-on-one” meeting, during which time the director told Ms. Brackett she was disappointed by Ms. Brackett’s lack of loyalty and that she had lost faith in her as a Focus Hope employee.
*289 In addition, instead of docking Ms. Brackett’s pay for only one day, which was the accepted punishment dictated by Ms. Brackett’s supervisor, the director informed Ms. Brackett that she would be docked two days’ pay. During this meeting, Ms. Brackett further alleges that Ms. Josaitis shook her finger in Ms. Brackett’s face and told her that she did not deserve a check from Focus Hope. When Ms. Brackett then asked if she was being fired, Ms. Josaitis simply shrugged her shoulders and left the room.
As a result of this confrontation, Ms. Brackett left the job that day and has not returned since. She was deeply upset by the incident and a psychiatrist diagnosed her as suffering from disabling depression as a result of the harsh reprimand by the director.
Given the fact that Ms. Brackett testified that 50 to 60 other Focus Hope employees did not attend the Martin Luther King Day celebration in Dearborn, and there was no evidence that these employees were also singled out and reprimanded in the same harsh manner as Ms. Brackett, it is questionable whether Daniel even applies. Daniel states that “MCL 418.305 does not operate to preclude benefits where an employee was injured while violating a work rule that had not been enforced by the employer.” Id. at 46-47. Because it appears that Ms. Brackett was selectively singled out for harsh punishment, it is questionable whether this work rule was strictly enforced across the board.
All the lower tribunals that dealt with this case declined to deem Ms. Brackett’s decision not to attend the celebration in Dearborn as “misconduct.” Although the magistrate found that Ms. Brackett “actually did willfully not attend the defendant’s M L King Day celebration,” he made that determination in the context of discussing Ms. Brackett’s perceptions of workplace *290 events. In deciding whether Ms. Brackett should be denied benefits under MCL 418.305, the magistrate used the word “misconduct” in quotation marks and refused to follow Daniel, ruling that the conduct at issue in this case was “a far cry” from that in Daniel. The WCAC specifically stated that to call Ms. Brackett’s actions “misconduct” was “clearly unreasonable” because she should not have been expected to attend the celebration in Dearborn. The Court of Appeals agreed that Ms. Brackett’s “pre-arranged non-attendance” was not misconduct. Brackett, supra at 2.
Additionally, the magistrate found that Ms. Josaitis’s reaction amounted to a “chastisement” of Ms. Brackett, whom she accused of having “broken trust” with the organization and with Ms. Josaitis herself. Neither the open discussions among the employees of Focus Hope about the propriety of holding the celebration in Dear-born nor Ms. Brackett’s discussion with her supervisor about the one-day-pay sanction had prepared Ms. Brackett for Ms. Josaitis’ severe criticism and loss of trust in her, which accompanied the decision to dock her two days’ pay. Notably, the magistrate did not find that Ms. Brackett was injured by Ms. Josaitis’s enforcement of the rule through the increased pay sanction. Rather, he found that she was injured by Ms. Josaitis’s expressed personal disappointment, lack of trust, and loss of confidence in Ms. Brackett. Thus, it is questionable whether Ms. Brackett’s mental injury resulted from the proper enforcement of a workplace rule.
Given the evidence tending to show that Ms. Brackett was singled out for harsh criticism, and the fact that her “misconduct” here does not equate to the “intentional and wilful” sexual harassment that occurred in Daniel, I dissent from the majority of four’s decision to reverse and thereby deprive Ms. Brackett of disability *291 benefits. The magistrate, the WCAC, and the Court of Appeals all concluded that the rule in Daniel should not be extended to this case. The majority of four instead nonsensically concludes that an employee’s decision not to follow a work rule amounts to so-called “intentional and wilful misconduct” and precludes workers’ compensation benefits regardless of whether the rule is controversial and whether it is properly and uniformly enforced. Consequently, I agree with the decision reached by the Court of Appeals affirming the magistrate and WCAC’s award of benefits to the plaintiff.
As a final point, I note that given the vastly divergent factual scenarios presented in this case and in Daniel, the majority of four should, at the very least, have granted the application for leave to appeal in order that the parties and the Court would have the benefit of full briefing and argument on this important question.
CAVANAGH and KELLY, JJ., concurred with WEAVER, J.

 Brackett v Focus Hope, Inc, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2007 (Docket No. 274078) (emphasis added).

 The claimant in Daniel was a male probation officer employed by the Michigan Department of Corrections. The basis for denying workers’ compensation benefits to the claimant in Daniel was the probation officer’s blatant and repeated sexual harassment of several female defense attorneys.