# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

WILMORE-MOODY v ZAKIR

Docket No. 163116. Argued on application for leave to appeal December 8, 2022. Decided May 31, 2023.

Adora Wilmore-Moody, individually and as next friend of her minor son, brought an action in the Wayne Circuit Court against Mohammed Zakir and Everest National Insurance Company, alleging that Zakir had negligently rear-ended her vehicle and seeking personal protection insurance benefits from Everest for the injuries she and her son incurred as a result of the collision. Everest did not pay the benefits but instead rescinded plaintiff's policy on the ground that plaintiff had failed to disclose that she had a teenaged granddaughter living with her when she applied for the insurance policy. Everest then brought a counterclaim seeking declaratory relief and moved for summary disposition of plaintiff's claim against it under MCR 2.116(C)(10), arguing that it was entitled to rescind plaintiff's policy because she had made a material misrepresentation in her insurance application. The trial court, John H. Gillis, Jr., granted Everest's motion for summary disposition. After this ruling, Zakir also moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was barred from recovering third-party noneconomic damages from him under the no-fault act, MCL 500.3101 *et seq*., because once Everett rescinded plaintiff's insurance policy, she did not have the security required under MCL 500.3135(2)(c) at the time the injury occurred. The trial court granted Zakir summary disposition as well. Plaintiff appealed. The Court of Appeals, BORRELLO and SWARTZLE, JJ. (GLEICHER, P.J., concurring in part and dissenting in part), in an unpublished per curiam opinion issued May 6, 2021 (Docket No. 352411), affirmed the grant of summary disposition to Everest, reversed the grant of summary disposition to Zakir, and remanded the case for further proceedings. Zakir sought leave to appeal this decision. The Michigan Supreme Court, in lieu of granting leave to appeal, ordered oral argument on the application. 509 Mich 881 (2022).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

An insurer's decision to rescind an automobile insurance policy after a motor vehicle collision does not operate to alter the past by rendering the insured as having been without no-fault insurance at the time they were injured in that collision for purposes of MCL 500.3135(2)(c), which prohibits a person from recovering third-party benefits for injuries resulting from a collision if they were operating their own motor vehicle at the time the injury occurred and did not have an insurance policy in effect for that vehicle. Accordingly, plaintiff had the required insurance at the

time she and her son were injured, despite Everest's subsequent rescission of the policy, and Zakir, as a nonparty to the contract, was not entitled to use Everest's rescission as a defense against plaintiff's negligence claim.

1. Apart from certain enumerated exceptions, the no-fault act abolished tort liability for harm caused while owning, maintaining, or using a motor vehicle in Michigan. The relevant exception in this case was MCL 500.3135, which allows claims for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle that resulted in death, serious impairment of body function, or permanent serious disfigurement. However, there are circumstances that bar recovery under this statute, including operating one's own vehicle at the time the injury occurred and failing to have the required no-fault insurance policy in effect for that motor vehicle under MCL 500.3101 at the time the injury occurred.

2. When a person commits fraud in the application for an insurance policy, the blameless contracting party may avoid its contractual obligations through the application of traditional legal and equitable remedies, such as rescission. Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made. Rescission does not function by automatic operation of the law, but rather may be granted only in the sound discretion of the court.

3. The trial court erred by granting Zakir summary disposition on the ground that Everest's rescission of the insurance policy barred plaintiff's third-party claim under MCL 500.3135(2)(c). To be eligible to sue for third-party noneconomic damages resulting from a motor vehicle collision, the owner or registrant of the vehicle must have maintained the required security "at the time the injury occurred" under MCL 500.3135(2)(c). It was undisputed in this case that, at the time the injury occurred, plaintiff held an insurance policy issued by Everest. Everest's subsequent rescission of the policy did not mean that plaintiff was not insured at the time the injury occurred. Rescission is a contractual remedy intended to restore the parties to the contract to their relative precontract positions. Zakir was not a party to plaintiff's contract with Everest, nor did he incur any obligation or receive any benefit from the contract. Given that Zakir was unaffiliated with the contract, he could not rely on Everest's chosen contractual remedy to defend against plaintiff's statutory negligence claim under MCL 500.3135. Further, while rescission is a legal fiction available as a contractual remedy for the defrauded party, it does not alter reality or act as a time machine. Rather, rescission extends no further than is necessary to protect the innocent party in whose favor it is invoked. Zakir offered no persuasive argument that the Legislature intended to incorporate this legal fiction, traditionally applied to contractual relationships, into the statutory exemption for third-party claims under MCL 500.3135(2)(c).

Court of Appeals judgment affirmed; case remanded to the trial court for further proceedings.

Justice BOLDEN did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED May 31, 2023

S T A T E   O F   M I C H I G A N

SUPREME COURT

ADORA WILMORE-MOODY, Individually
and as Next Friend of DAIMLER AAKU,

       Plaintiff/Counterdefendant-
       Appellee,

v                                     No. 163116

MOHAMMED ZAKIR,

       Defendant-Appellant,

and

EVEREST NATIONAL INSURANCE CO.,

       Defendant/Counterplaintiff-
       Appellee,

and

PDB INVESTMENTS & INSURANCE
CO., MICHIGAN ASSIGNED CLAIMS
PLAN, and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

       Defendants.

BEFORE THE ENTIRE BENCH (except BOLDEN, J.)

CAVANAGH, J.

Under Michigan's no-fault act, MCL 500.3101 *et seq.*, a person injured in an automobile accident typically may file two different actions: a claim against the responsible insurer for "first-party benefits" such as medical expenses, work loss, and replacement services, and a claim against the at-fault driver for what are colloquially referred to as "third-party benefits"—noneconomic damages for death, serious impairment of a bodily function, or permanent serious disfigurement. These third-party benefits are not recoverable, however, if the injured person was operating their own motor vehicle at the time the injury occurred and did not have an insurance policy in effect for that vehicle. MCL 500.3135(2)(c). The issue presented in this case is whether a motorist is without the required insurance "at the time the injury occurred," MCL 500.3135(2)(c), if their insurance company rescinded their insurance policy after the accident.

We hold that an insurer's decision to rescind a policy postaccident does not trigger the exclusion in MCL 500.3135(2)(c). Rescission is an equitable remedy in contract, exercised at the discretion of the insurer, and does not alter the reality that, at the time the injury occurred, the injured motorist held the required security. Rescission by the insurer postaccident is not a defense that can be used by a third-party tortfeasor to avoid liability for noneconomic damages. Accordingly, we affirm the Court of Appeals' reversal of the trial court's grant of summary disposition to defendant Mohammed Zakir.

## I. UNDERLYING FACTS & PROCEEDINGS

The material facts of this case are not in dispute. On April 6, 2017, plaintiff, Adora Wilmore-Moody, and her minor son were parked outside his school when Zakir rear-ended

plaintiff's vehicle. According to plaintiff, as a result of the collision she and her son suffered serious injuries to their heads, necks, and backs. At the time of the collision, plaintiff held an insurance policy issued by defendant Everest National Insurance Company. Following the collision, plaintiff submitted a claim to Everest for first-party no-fault benefits. Rather than paying plaintiff benefits, Everest notified her that it would be rescinding her policy and returning her premiums because it concluded that she had made a material misrepresentation in her insurance application.[1]

On March 6, 2018, plaintiff filed suit on behalf of herself and her son. Relevant here, she asserted a claim against Everest for first-party personal protection insurance (PIP) benefits and a third-party tort claim against Zakir for his alleged negligence in causing the collision.[2] Everest moved for summary disposition under MCR 2.116(C)(10), arguing that it had a right to rescind plaintiff's insurance policy because of the material misrepresentations she made in her insurance application.[3] The trial court agreed, granted Everest's motion for summary disposition, and dismissed the first-party claim.

---

[1] When plaintiff first obtained insurance through Everest in August 2016, she was asked to identify all household members aged 14 or older. Although her teenaged granddaughter was living in her home at that time, plaintiff did not disclose her as a household member. According to Everest, if plaintiff had disclosed this information, it would have charged her additional premiums of $1,532 for six months of coverage.

[2] Plaintiff also asserted a claim for first-party PIP benefits against the Michigan Assigned Claims Plan and the Michigan Automobile Insurance Placement Facility on behalf of her son. These claims are not at issue in this appeal.

[3] Everest also brought a counterclaim seeking declaratory relief with respect to its argument that it was entitled to rescind the insurance policy. The trial court does not appear to have ruled separately on this counterclaim. In any event, it is not at issue in this appeal.

Following this ruling, Zakir also moved for summary disposition under MCR 2.116(C)(10). Zakir argued that plaintiff was barred from recovering third-party noneconomic damages because, he reasoned, once the contract was rescinded plaintiff no longer had the required security "at the time the injury occurred." MCL 500.3135(2)(c). The trial court agreed and granted Zakir summary disposition.

Plaintiff appealed. Germane to this appeal, she argued that the trial court erred by granting summary disposition in Zakir's favor on the basis of Everest's rescission of the insurance policy.[4] The Court of Appeals agreed, reversing the trial court in part and remanding for further proceedings. *Wilmore-Moody v Zakir*, unpublished per curiam opinion of the Court of Appeals, issued May 6, 2021 (Docket No. 352411).

Zakir then sought leave to appeal in this Court. On March 23, 2022, we ordered oral argument on the application, directing the parties to address "whether the rescission of an insurance policy under the no-fault act, MCL 500.3101 *et seq.*, bars recovery of noneconomic damages under MCL 500.3135(2)(c) on the basis that the claimant 'did not have in effect . . . the security required by [MCL 500.3101(1)] at the time the injury occurred.' " *Wilmore-Moody v Zakir*, 509 Mich 881, 881-882 (2022).

---

[4] Plaintiff also argued that the trial court erred when it held that Everest was justified in rescinding her insurance policy. The Court of Appeals majority rejected this argument over a dissent authored by Judge GLEICHER. Plaintiff did not seek leave to appeal regarding this issue. Therefore, whether rescission was an appropriate contractual remedy in this case is not before this Court.

4

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition submitted pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Taxpayers for Mich Constitutional Gov't v Dep't of Technology, Mgt, and Budget*, 508 Mich 48, 61; 972 NW2d 738 (2021). Summary disposition is appropriately granted only when no genuine issue of material fact exists. *Id*.

We also review de novo questions of statutory interpretation. *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 508; 968 NW2d 482 (2021). The key purpose of statutory interpretation is to "ascertain the legislative intent that may reasonably be inferred from the statutory language." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (quotation marks and citation omitted). "The most reliable evidence of that intent is the plain language of the statute." *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022) (quotation marks, brackets, and citation omitted).

Finally, the application of an equitable doctrine such as rescission is also reviewed de novo. *Esurance*, 507 Mich at 509.

## III. LEGAL & EQUITABLE PRINCIPLES

In this case we are asked to examine provisions of the no-fault act, particularly MCL 500.3135(2)(c). Zakir asserts that this case also calls for our attention "to the law of contracts and rescission in equal measure with statutory interpretation." We therefore begin by summarizing the applicable legal principles, both statutory and contractual.

## A. RELEVANT NO-FAULT ACT PROVISIONS

"Michigan's no-fault insurance system is a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). As part of this system, the no-fault act requires registrants and operators of motor vehicles to maintain compulsory no-fault insurance. MCL 500.3101(1); *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978).

Apart from certain enumerated exceptions, the no-fault act abolished tort liability for harm caused while owning, maintaining, or using a motor vehicle in Michigan. *American Alternative Ins Co v York*, 470 Mich 28, 30; 679 NW2d 306 (2004). The relevant exception here is MCL 500.3135, which allows claims for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle that resulted in death, serious impairment of body function, or permanent serious disfigurement. MCL 500.3135(1). However, there are circumstances that bar recovery under this statute. At the time of the motor vehicle collision at issue, MCL 500.3135(2)(c) provided:

> Damages shall not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by [MCL 500.3101] at the time the injury occurred.[5]

---

[5] MCL 500.3135(2)(c), as amended by 2012 PA 158. This provision has since been amended to substitute the word "must" for the word "shall." See 2019 PA 21; 2019 PA 22.

In other words, one consequence of failing to maintain no-fault insurance is that the injured motorist loses the opportunity to seek third-party noneconomic damages from a negligent tortfeasor.

## B. RESCISSION AS A CONTRACTUAL REMEDY

"[F]raud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). One equitable remedy that may be available is rescission. *Id*. at 558. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi*, 502 Mich at 409; see also *United Security Ins Co v Comm'r of Ins*, 133 Mich App 38, 42; 348 NW2d 34 (1984). Rescission is, stated simply, a "legal fiction" meant to restore the contracting parties to the status quo. *Esurance*, 507 Mich at 524 (CLEMENT, J., dissenting); see also *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938).

Rescission, notably, does not "function by automatic operation of the law." *Bazzi*, 502 Mich at 411. Instead, because rescission is an equitable remedy, it should be "granted only in the sound discretion of the court." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982); see also *Bazzi*, 502 Mich at 411 ("Equitable remedies are adaptive to the circumstances of each case . . . .").

7

The Court of Appeals concluded that the trial court erred by granting Zakir summary disposition on the ground that Everest's rescission of the insurance policy barred plaintiff's third-party claim under MCL 500.3135(2)(c). We agree.

As we must, we start our analysis with an examination of the plain language of the statute. *Rouch World*, 510 Mich at 410. To be eligible to sue for third-party noneconomic damages, MCL 500.3135(2)(c) requires that the owner or registrant maintained the required security "at the time the injury occurred." The statute uses the past-tense phrase "at the time the injury occurred" twice. This signals the Legislature's intent concerning the time that is relevant when considering whether a claimant is barred from suing for noneconomic damages. It is undisputed in this case that, "at the time the injury occurred," plaintiff held an insurance policy issued by Everest and that the policy was not rescinded until much later.

Zakir urges the Court to conclude that Everest's after-the-fact rescission of the insurance policy means that plaintiff was not insured "at the time the injury occurred." We reject this argument for two related reasons. First, rescission is a contractual remedy intended to restore *the parties to the contract* to their relative precontract positions. *Esurance*, 507 Mich at 516. Zakir was not a party to the contract and did not incur any obligation on the basis of the contract, nor did he benefit from the contract. Accordingly, Zakir was entirely unaffected by plaintiff's misrepresentations and disconnected from Everest's discretionary decision to seek rescission of the contract. Given that he was unaffiliated with the contract, Zakir may not rely on Everest's chosen contractual remedy

to defend against plaintiff's statutory negligence claim.[6]  See *Whitley v Tessman*, 324 Mich 215, 222; 36 NW 724 (1949) (noting that third parties who were not defrauded may not "mak[e] themselves the avengers of some alleged wrong").

Second, while rescission is a legal fiction available as a contractual remedy for the defrauded party, it does not alter reality or act as a DeLorean time machine.  In other words, although courts may engage in "revisionist history," *Esurance*, 507 Mich at 495 (CLEMENT, J., dissenting), when rescission is deemed an appropriate contractual remedy, that legal fiction does not actually create an alternate reality.  As this Court has noted, rescission "extends no further than is necessary to protect the innocent party in whose favor it is invoked."  *Zucker v Karpeles*, 88 Mich 413, 430; 50 NW 373 (1891).  Zakir offers no persuasive argument that the Legislature intended to incorporate this legal fiction, traditionally applied to contractual relationships, into the statutory exemption for third-party claims under MCL 500.3135(2)(c).

Zakir asserts that allowing a claimant to recover noneconomic damages against a third-party tortfeasor under MCL 500.3135(2)(c) when an insurance policy is rescinded postaccident will encourage motorists to commit fraud when purchasing policies.  To the extent this policy consideration is relevant to our decision,[7] we note that motorists who

---

[6] Rescission does not operate automatically and is only one remedy out of many that a defrauded insurer can choose to pursue.  *Titan*, 491 Mich at 558-559.  Zakir fails to explain why a motorist's right to sue a third party in tort should hinge on an insurance company's chosen remedy.

[7] See *Calovecchi v Michigan*, 461 Mich 616, 624; 611 NW2d 300 (2000) ("[P]olicy questions are properly directed toward the Legislature rather than to this Court.  Our duty is to construe the text of the statute before us . . . .").

9

intentionally defraud insurance companies to secure lower premiums face considerable negative consequences for their misrepresentations. For example, because of Everest's rescission in this case, plaintiff will be unable to recover economic damages from Everest and any tort recovery she obtains may be subject to subrogation or reimbursement claims from insurers who have paid benefits on her behalf.[8] See MCL 500.3177; *Cooper v Jenkins*, 282 Mich App 486, 487; 766 NW2d 671 ("[A]n insurer assigned to pay benefits arising from an accident involving an uninsured motor vehicle has the right to seek reimbursement from the owner of that vehicle . . . ."). Where the statutory language does not require it, we decline to impose an additional harsh consequence under MCL 500.3135(2)(c). Were we to weigh policy considerations, however, we note that to allow the rescission doctrine to act as a statutory defense in instances such as these would heap an undeserved windfall onto negligent drivers seeking to avoid liability for serious injuries they are alleged to have caused.

## V. CONCLUSION

In sum, rescission of an insurance policy is a contractual remedy between the insured and insurer. It does not operate to alter the past by rendering the insured as having been without no-fault insurance at the time of the accident for purposes of the prohibition contained in MCL 500.3135(2)(c). In this case, plaintiff had insurance "at the time the injury occurred." Although Everest later rescinded the policy, that rescission did not alter

---

[8] Zakir suggests that our ruling today could affect whether benefits can be obtained under MCL 500.3113 (first-party benefits) and MCL 500.3172 (benefits from the Michigan Assigned Claims Plan). Those provisions are not before us in this appeal, and we leave those questions for another day.

10

the past vis-à-vis Zakir.  Therefore, Zakir, as a nonparty to the contract, is not entitled to use Everest's rescission as a defense against claims of negligent driving.  We affirm the Court of Appeals judgment and remand this case to the trial court for further proceedings consistent with this opinion.

Megan K. Cavanagh
Elizabeth T. Clement
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth M. Welch

BOLDEN, J., did not participate in the disposition of this case because the Court considered it before she assumed office.