### ANDREWS v GENERAL MOTORS CORPORATION

Docket No. 43707. Submitted April 15, 1980, at Detroit.—Decided July 2, 1980. Leave to appeal applied for.

Martin D. Andrews was an employee of General Motors Corporation when he was injured in a fight with another employee. He applied for worker's disability compensation benefits. At the hearing, it was established that Andrews was working with another worker in a two-man team. Roger Johnson was working on another two-man team. Some employees, including Andrews, were advocating a protest against a management decision in the form of a work slowdown, a violation of shop rules. Johnson refused to participate. During a break, Andrews approached Johnson and exchanged angry words with him. Johnson pushed Andrews, Andrews hit Johnson and a fight resulting in Andrews' injuries ensued. The referee awarded benefits to Andrews and the Worker's Compensation Appeal Board affirmed. General Motors appeals by leave granted. *Held:*

An employee may recover worker's disability compensation benefits for injuries received in assaults, whether sportive or malicious, which arise out of the employment and are received in the course thereof except where the injured employee's actions are of such a gross and reprehensible nature as to constitute intentional and willful misconduct. Andrews' conduct did not involve such a degree of moral turpitude as to preclude recovery.

Affirmed.

WORKER'S COMPENSATION — ASSAULTS — WILLFUL MISCONDUCT.

An employee may recover worker's disability compensation benefits for injuries received in assaults, whether sportive or malicious, which arise out of the employment and are received in the course thereof except where the injured employee's actions are of such a gross and reprehensible nature as to constitute intentional and willful misconduct.

*Manason & Ernstein, P.C.,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTE
[1] 82 Am Jur 2d, Workmen's Compensation § 330.

*Willard W. Wallace* and *Francis S. Jaworski,* for defendant.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and D. F. WALSH, JJ.

PER CURIAM. General Motors Corporation (GM) is appealing by leave granted from a January 12, 1979, opinion and order of the Worker's Compensation Appeal Board (WCAB) affirming a referee's award of compensation benefits to Martin D. Andrews. Andrews was injured in a fight with a coworker and required five to six days of hospitalization.

Andrews filed a petition for worker's compensation benefits on March 28, 1975. A hearing was held before an administrative law judge on April 10, 1976. Arthur Dabbs, a coworker of Andrews' at the General Motors Fleetwood plant, testified concerning the injury. On February 10, 1975, Dabbs was working on a two-person team with Roger Johnson. Andrews and another man were working in a two-person team in front of Dabbs and Johnson. Some employees, including Andrews, were advocating a slowdown action in order to protest management's reduction of the number of teams working in their area without reducing the workload. Slowdown tactics constitute a violation of shop rules. Johnson refused to go along with the slowdown, and this caused an argument between Johnson and Andrews. Later, Dabbs and Johnson were sitting at a table during a break. Andrews came over to them and began exchanging angry words with Johnson. Johnson stood up and pushed Andrews. Andrews responded by hitting Johnson with his fist.

Andrews testified at the hearing that he and Johnson had been friends prior to the altercation

in question. They exchanged some angry words because Johnson refused to go along with a work slowdown. A while later, the line broke down, so Andrews walked over to where Johnson was sitting. The argument resumed, then Johnson jumped up from the table and pushed Andrews back and kept coming, so Andrews hit him. During the fight, Andrews hit his head on a rail, became unconscious and was taken to the hospital. Andrews suffered a fractured jaw, a chipped bone in his arm and injury to the neck and back. Andrews was given a two-week disciplinary layoff as a result of the fight. Roger Johnson's testimony at the hearing essentially confirmed Andrews' version. John Wright, a line supervisor at the plant, stated that Andrews had jumped up from the table and threw the first punch at Johnson.

Section 301 of the Worker's Disability Compensation Act provides compensation for an employee for an injury "arising out of and in the course of his employment". MCL 418.301; MSA 17.237(301). This includes an injury sustained as a result of actions by coemployees. MCL 418.827; MSA 17.237(827); *Fidelity & Casualty Co of New York v DeShone,* 384 Mich 686, 691; 187 NW2d 215 (1971). Under § 305 of the act, if the employee is injured "by reason of his intentional and willful misconduct" he is not entitled to benefits. MCL 418.305; MSA 17.237(305).

On appeal, GM contends that the WCAB erred in finding that Andrews' injuries were compensable, since they resulted from an altercation which had been initiated by him.

In *Crilly v Ballou,* 353 Mich 303, 327; 91 NW2d 493 (1958), the Michigan Supreme Court specifically overruled the case of *Tarpper v Weston-Mott Co,* 200 Mich 275; 166 NW 857 (1918), and held

that injuries received in assaults, whether they are sportive or malicious, are not beyond the realm of compensability if they arise out of the employment and are received in the course thereof. The Court did exclude from coverage those actions which are "of such gross and reprehensible nature as to constitute intentional and willful misconduct". *Crilly, supra,* 327. The Court declined to mark out a precise line of demarcation for acts involving a degree of "moral turpitude", leaving that delineation for a case-by-case determination. The example given for a case to be excluded by its willful and wanton nature was *Federal Underwriters Exchange v Samuel,* 138 Tex 444; 160 SW2d 61 (1942), wherein the assailant-claimant armed himself with an iron bar and a knife and attacked a fellow employee, and was injured when that person defended himself.

The *Crilly* Court specifically considered, then rejected, making the question of compensation turn on whether or not the claimant was the aggressor. *Crilly, supra,* 321-324.

In *Harrison v Tireman & Colfax Bump & Repair Shop,* 395 Mich 48; 232 NW2d 274 (1975), the Michigan Supreme Court again addressed the issue of compensation for work-related assaults. Harrison became a quadraplegic as the result of a gunshot wound in the neck inflicted by his employer. The plaintiff testified that Jack White, his employer, approached him with a shotgun without provocation and struck him twice with the barrel. When another employee intervened and wrestled with White over the gun, it went off and wounded Harrison. Jack White testified that he and plaintiff argued about plaintiff's uncompleted work. White claimed that Harrison assaulted him with a wrench and knocked him over a floor jack. An-

other employee named Adam Herring intervened and the fight stopped. Plaintiff threatened bodily harm to White. White went to get his shotgun. When he returned, Herring took the gun away and walked over to the office with White. At that time, White's brother shouted out a warning that plaintiff was raising a 4 × 4 piece of wood to strike White. White grabbed the gun and shot the plaintiff. Both Herring and Charles White corroborated Jack White's version. The Supreme Court stated as dictum that if the plaintiff proceeded toward White with the apparent ability to inflict bodily harm, he might well be guilty of the type of intentional and willful misconduct which would preclude him from an award of benefits under *Crilly v Ballou, supra.* There was no decision, however, as the case was remanded so that the WCAB could clarify its opinion by stating the applicable law and facts supporting its conclusion that plaintiff was not guilty of intentional and willful misconduct.

Judge BRENNAN, in his partial concurrence in *Chester v World Football League,* 75 Mich App 455, 464; 255 NW2d 643 (1977), stated that a football player who grabbed the controller by the arm in a dispute over a paycheck when the franchise became insolvent was not exhibiting the type of gross and reprehensible act which would constitute "intentional and willful misconduct" for purpose of MCL 418.305, as construed by *Crilly v Ballou, supra.*

Similarly, we cannot say that Andrews' actions in the case at bar constituted the type of "willful and wanton" misconduct which would preclude him from coverage under the standard of *Crilly.* This is not the type of case where a claimant arms himself with a gun, knife or block of wood and

pursues a fellow employee, or an employer, with the apparent ability to inflict harm, as was the case in *Federal Underwriters Exchange v Samuel, supra,* or in *Harrison v Tireman Bump Shop, supra.* Here, Andrews and Johnson were engaged in an argument about a work slowdown. Johnson got up and pushed Andrews. Andrews responded by punching Johnson with his fist. This conduct did not involve such a degree of "moral turpitude", which is defined as "an act of baseness, vileness, or depravity",[1] so as to preclude Andrews from recovery.

We therefore affirm the order of the WCAB. Costs to Andrews.

---

[1] Black's Law Dictionary (4th ed), p 1160.