*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PORSHA WILLIAMSON and LATESHEA
WILLIAMSON, Copersonal Representatives of the
ESTATE OF CHARLES WILLIAMSON,

Plaintiffs-Appellants,

v

AAA OF MICHIGAN,

Defendant-Appellee.

FOR PUBLICATION
September 22, 2022
9:35 a.m.

No. 357070
Wayne Circuit Court
LC No. 19-014047-NF

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

GARRETT, J.

The Michigan Assigned Claims Plan (MACP) assigned a no-fault claim brought by Charles Williamson to defendant AAA. Williamson brought suit against AAA for refusing to pay no-fault personal protection insurance (PIP) benefits, and after he passed away, his Estate proceeded with this litigation. AAA eventually moved for summary disposition, arguing that the Estate was ineligible for PIP benefits because it committed a fraudulent insurance act by submitting false statements in a discovery response to interrogatories. The trial court agreed with AAA and dismissed the Estate's action. We hold that the trial court erred because MCL 500.3173a(4), the statutory provision governing fraudulent insurance acts in this context, only applies to statements offered during the prelitigation insurance claims process and not to those offered during litigation. Accordingly, we reverse and remand.

## I. FACTUAL BACKGROUND

On October 30, 2018, Charles Williamson was a pedestrian who suffered injuries after being struck by a car. Williamson applied for no-fault PIP benefits through the Michigan

-1-

Automobile Insurance Placement Facility (MAIPF). The MACP, which is operated by the MAIPF, assigned Williamson's claim to AAA.[1]

After AAA refused to pay PIP benefits, Williamson filed suit for breach of contract and declaratory relief.[2] Williamson died in an unrelated second motor vehicle accident on October 23, 2019. Soon after, Williamson's daughters, Porsha and Lateshea, acquired letters of authority to proceed with this lawsuit as the personal representatives of Williamson's estate.

At issue in this case is the Estate's answers to AAA's interrogatories, submitted during discovery on February 10, 2020. The relevant answers at issue on appeal are:

30. Do you claim any loss of services no-fault benefits in this lawsuit?

ANSWER:

31. If your answer to Interrogatory 30 is yes, please provide the following information as to each person who has provided to you such services:

* * *

ANSWER:

. . . Lirrice Brown. See attached services forms[.][3]

* * *

57. Do you claim benefits for attendant care or nursing services in this lawsuit pursuant to MCL §500.3107(1)(a)? If so, please confirm what is the total amount of unpaid attendant care services claimed through the date you answer these Interrogatories.

ANSWER:

Yes. See attached[.]

Attached to the Estate's answers were replacement service and attendant care forms identifying Brown as the service provider, including forms for services rendered in November and December 2019, after Williamson passed away. Lateshea signed the interrogatory answers on behalf of the

---

[1] The MACP assigns no-fault insurance claims made by individuals without an available source of no-fault insurance to participating insurers. See MCL 500.3172(1).

[2] It is unclear why Auto Club Insurance Association was originally named as defendant in this case. In December 2019, the trial court entered an order amending the case caption to replace Auto Club with the proper party defendant, AAA.

[3] The Estate mistakenly left Interrogatory 30 blank, but its answer to Interrogatory 31 indicates that it was claiming loss of services no-fault benefits.

Estate, acknowledging that she believed them to be true to the best of her knowledge, information, and belief.

On December 1, 2020, AAA moved for summary disposition under MCR 2.116(C)(10). AAA argued that the Estate knowingly presented material misrepresentations in support of its claim for no-fault benefits by submitting reimbursement forms for replacement services and attendant care rendered after Williamson passed away. Consequently, AAA asserted that the Estate was completely barred from recovering no-fault benefits under MCL 500.3173a(4) and this Court's decision in *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772; 910 NW2d 666 (2017). In opposition to the motion, the Estate argued that the service forms that AAA relied on for dismissal were predated forms completed before Williamson's death that the Estate's counsel had to produce during discovery. The Estate pointed to this Court's decision in *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), to argue that false statements made during discovery do not allow an insurer to avoid coverage. At a hearing on April 6, 2021, the parties argued consistently with their briefs, and the trial court granted AAA's motion for summary disposition. The trial court entered an order concluding that the Estate "committed a fraudulent insurance act by knowingly presenting material misrepresentations in support of its claim for no-fault benefits," and therefore the Estate was "ineligible for payment or benefits pursuant to MCL 500.3173a." The Estate now appeals as of right.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition made under MCR 2.116(C)(10) de novo. *Candler*, 321 Mich App at 777. "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Underlying the trial court's summary disposition ruling are issues of statutory interpretation, which we also review de novo. *Candler*, 321 Mich App at 777.

## III. LEGAL BACKGROUND

The no-fault act, MCL 500.3101 *et seq*., enacted by the Legislature in 1973, "created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle

accidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). "The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Kelley*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). To determine which insurer is designated to provide PIP benefits to a person injured in a motor vehicle accident, "MCL 500.3114 instructs a person to pursue his or her 'claim' for PIP benefits from insurers according to the listed order of priority." *Griffin v Trumbull Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162419); slip op at 9 (footnote omitted). But when an individual cannot obtain no-fault insurance through ordinary means, the MAIPF fills in the gaps. See MCL 500.3301. The no-fault act directs the MAIPF to "adopt and maintain an assigned claims plan." MCL 500.3171(2). As this Court has explained:

> Even when there does not appear to be any applicable PIP coverage, the Legislature provided that an injured person could obtain PIP benefits through the MACP. See MCL 500.3172(1). All self-insurers or insurers writing insurance as provided by the no-fault insurance act are required to participate in the MACP, with the associated costs being "allocated fairly among insurers and self-insurers." MCL 500.3171(2). In this way, the Legislature ensured that every person injured in a motor vehicle accident would have access to PIP benefits unless one of the limited exclusions in the no-fault act applies, and the losses suffered by uninsured persons injured in motor vehicle accidents could be indirectly passed on to the owners and registrants of motor vehicles through insurance premiums. [*Spectrum Health Hosps v Mich Assigned Claims Plan*, 330 Mich App 21, 32; 944 NW2d 412 (2019).][4]

Thus, if no other applicable insurance is available, the MACP serves as "the insurer of last priority" for an injured person seeking to recover PIP benefits. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015).

## IV. ANALYSIS

The Estate argues that the trial court erred by holding that its submission of service forms dated after Williamson's death constituted a fraudulent insurance act that was material to its claim for no-fault benefits and that barred its claim under MCL 500.3173a. The Estate contends that the forms were not submitted in support of its claim for no-fault benefits, but instead to comply with a discovery request. According to the Estate, AAA also failed to prove that the Estate had the requisite intent regarding the falsity of the forms and did not establish that the forms were material to the Estate's claim.

---

[4] Although portions of *Spectrum* have been superseded by the current version of MCL 500.3173a(1), the language cited above remains good law.

At issue here is MCL 500.3173a(4), the statutory provision governing fraudulent insurance acts made to the MAIPF or to insurers assigned by the MACP:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the [MAIPF], or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503][5] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of [PIP] benefits under the assigned claims plan.

In *Candler*, 321 Mich App at 779-780, this Court explained that an individual commits a "fraudulent insurance act" under MCL 500.3173a when:

> (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim.

After *Candler*, the Legislature amended MCL 500.3173a to clarify that the statute applies to statements presented in support of a claim to the MAIPF or "to an insurer to which the claim is assigned under the assigned claims plan." MCL 500.3173a(4).[6]

---

[5] MCL 500.4503, which is part of the Insurance Code, MCL 500.100 *et seq*., defines fraudulent insurance acts:

> A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:

> * * *

> (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim.

[6] When *Candler* was decided, the language currently found in MCL 500.3173a(4) was found in MCL 500.3173a(2). The prior language was largely unchanged by the 2019 amendments, except for the clarifying language discussed above. See 2019 PA 21. Thus, the rule of law announced in *Candler*—the interpretation of a "fraudulent insurance act" under MCL 500.3173a—controls.

-5-

The Estate first challenges the application of the second prong from *Candler*, arguing that the service forms were not statements made in support of a claim for no-fault benefits because they were produced during discovery. This argument turns on the proper interpretation of the word "claim" in MCL 500.3173a(4). Therefore, we begin with the principles of statutory interpretation. "Our fundamental obligation when interpreting a statute is to discern the legislative intent that may be reasonably inferred from the words expressed in the statute." *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008). In doing so, "we give effect to every word, phrase, and clause in a statute, and consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Anderson v Myers*, 268 Mich App 713, 714-715; 709 NW2d 171 (2005). While it is well-recognized that we apply a statute as written where the statutory language is clear and unambiguous, we have also noted that "[t]he no-fault act is remedial in nature and is to be liberally construed in favor of the persons who are intended to benefit from it." *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997).

Although "claim" is not defined in the no-fault act, our Supreme Court in *Griffin* provided helpful context to understanding its usage. *Griffin* analyzed the use of "claim" in MCL 500.3114, which in part, instructs individuals injured in a motor vehicle accident to "claim" no-fault benefits under the assigned claims plan or from an insurer in the order of priority. *Griffin*, ___ Mich at ___; slip op at 9; MCL 500.3114(4) through (6). The *Griffin* Court explained: "In this context, a claim for benefits is simply a demand to an insurer by its insured or a third party for payments that are believed to be due after a motor vehicle accident." *Id*. at __; slip op at 9. In a footnote, the Court elaborated:

> *The point is that making a claim for insurance benefits is not the same as filing a lawsuit*. This commonsense, contextual understanding is also consistent with how an insurance claim is understood within the insurance industry. See, e.g., National Association of Insurance Commissioners, *Glossary of Insurance Terms* (defining "claim" as "a request made by the insured for insurer remittance of payment due to loss incurred and covered under the policy agreement"); GEICO, *Glossary of Insurance Terms and Definitions* (defining "claim" as "[a]ny request or demand for payment under the terms of the insurance policy"); International Risk Management Institute, Inc., *Glossary* ("Claim — used in reference to insurance, a claim may be a demand by an individual or corporation to recover, under a policy of insurance, for loss that may come within that policy.") [*Id*. at __; slip op at 9 n 5 (citations omitted; emphasis added; alteration in original).]

This distinction between a "claim" for benefits submitted to the MAIPF or the MACP-assigned insurer and a *lawsuit* filed for a wrongful denial of that claim is further highlighted by the plain language of the no-fault act. For instance, the no-fault act consistently describes a lawsuit not as a claim but as an "action." See, e.g., MCL 500.3135(2) ("cause of action"); MCL 500.3145(1) ("action for recovery"); MCL 500.3174 ("action by a claimant"). And most relevant here, the no-fault act uses "claim" and "action" differently in statutory provisions involving the MACP. MCL 500.3174 provides:

> A person claiming through the assigned claims plan shall notify the [MAIPF] of his or her claim within 1 year after the date of the accident. On an initial determination of a claimant's eligibility for benefits through the assigned

claims plan, the [MAIPF] shall promptly assign the *claim* in accordance with the plan and notify the claimant of the identity and address of the insurer to which the *claim* is assigned. An *action* by a claimant must be commenced as provided in [MCL 500.3145]. [Emphasis added.]

The Legislature's consistent use of the word "claim" to describe a request for insurance benefits and use of the word "action" to describe a lawsuit later filed to recover those benefits is presumed to be an intentional choice by the Legislature. Thus, we must give independent meaning to these different words as they are used throughout the no-fault act. See *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) ("When the Legislature uses different words, the words are generally intended to connote different meanings.").

As previously noted, MCL 500.3173a(4) exclusively uses the word "claim" to describe a fraudulent insurance act that bars an individual from receiving PIP benefits through the MACP. Here, the Estate argues that its submission of inaccurate service forms during discovery was not "in support of a claim to the [MAIPF], or to an insurer to which the claim is assigned under the assigned claims plan." MCL 500.3173a(4). We agree. False statements submitted during discovery, after an *action* for recovery has been filed, are not statements offered in support of a *claim* to the MAIPF or the assigned insurer. The no-fault act recognizes a distinction between the prelitigation insurance claims process and the initiation of litigation through an action for recovery. Had the Legislature intended for MCL 500.3173a(4) to apply to statements made during litigation, the Legislature would have drafted the statute differently to apply, for example, to statements offered "in support of an action for recovery." Because the Legislature did not do so, we give "claim" its intended meaning.

Our conclusion is reinforced by considering the entirety of MCL 500.3173a. Courts should construe a statute "as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). MCL 500.3173a concerns a claimant's eligibility for PIP benefits and the denial of benefits, revealing that the Legislature intended for the statute to apply to the prelitigation claims process. See MCL 500.3173a(1) ("The [MAIPF] shall review a claim for [PIP] benefits under the assigned claims plan, shall make an initial determination of the eligibility for benefits under this chapter and the assigned claims plan, and shall deny a claim that the [MAIPF] determines is ineligible under this chapter or the assigned claims plan."). Thus, the plain language of MCL 500.3173a, including the exclusion provision for fraudulent insurance acts, applies to acts related to submitting a claim to the MAIPF or the servicing insurer, not to evidence submitted for the first time during litigation.[7]

---

[7] This interpretation is consistent with the circumstances in *Candler*. There, the plaintiff submitted forged documentation to Farm Bureau, the insurer assigned by the MACP, in support of his claim of reimbursement for replacement services allegedly provided by his brother. *Candler*, 321 Mich App at 776. Farm Bureau learned through a deposition of the plaintiff's brother, however, that the brother did not provide services to the plaintiff for some months listed in the service forms. *Id*.

The Estate also contends that this Court's decision in *Haydaw* supports its argument distinguishing statements offered through the prelitigation claims process from statements made during discovery. In *Haydaw*, 332 Mich App at 723, this Court addressed "whether statements made during litigation after the insured's claim is denied constitute grounds to void the policy under a fraud provision." *Haydaw* involved allegedly false testimony given by the plaintiff-insured at his deposition. *Id*. at 721-723. This Court held:

> False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false are matters for a jury or a judge acting as fact-finder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper. Indeed, defendant is essentially seeking dismissal of plaintiff's claim on the basis of alleged discovery misconduct. Given that questions of credibility and intent are generally left to the trier of fact, "[i]t is . . . doubtful whether dismissal for intentionally false deposition testimony is ever appropriate." *Swain v Morse*, 332 Mich App 510, 524; 957 NW2d 396 (2020). In any event, it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy. [*Id*. at 726-727 (alteration in original).]

This Court clarified *Haydaw*'s scope in *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 619; 963 NW2d 695 (2020):

> We read *Haydaw* as standing for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the commencement of legal proceedings. This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim and that the denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that took place before the proceedings began.

Just like in *Haydaw*, we hold that the fraudulent insurance act provision in MCL 500.3173a does not apply to statements made after litigation has ensued. We recognize, as AAA argues, that *Haydaw* involved a fraud provision in a no-fault insurance policy, whereas this case involves a claim assigned to an insurer under the MACP and is governed exclusively by statute. Nevertheless, much of the rationale from *Haydaw* is persuasive to the circumstances before us, and most

---

Thus, although the fraudulent act was discovered after litigation had commenced, it related to statements made in support of the plaintiff's claim to the assigned insurer.

importantly, applying *Haydaw*'s holding in this context is consistent with the plain language of MCL 500.3173a(4).

Here, the attendant care and replacement service forms were not submitted in support of Williamson's *claim* for no-fault benefits that he submitted to the MAIPF or to AAA. Rather, the forms were disclosed during discovery—after the claim was submitted to the MAIPF, assigned to AAA, denied by AAA, and litigation had ensued. MCL 500.3173a(4) asks whether the allegedly false statement was "part of or in support of a claim to the [MAIPF], or to an insurer to which the claim is assigned under the assigned claims plan." But a false statement made in a filing submitted during discovery is not a statement made to the MAIPF or to an assigned insurer. Rather, a false statement made during discovery is made to the court. See *Haydaw*, 332 Mich App at 728 ("[A]n insured's statements during discovery are made with the intention that the trier of fact, not the insurer, will act on them."). That is why the court rules authorize courts to sanction discovery violations under specific circumstances. See MCR 2.313. Thus, an insurer may have recourse for a false statement made during discovery, but it is not dismissal of the claim under MCL 500.3173a.[8]

In sum, we conclude that the second element of a "fraudulent insurance act" under MCL 500.3173a(4) as discussed in *Candler*—whether the statement supports a "claim" for no-fault benefits—refers to statements offered to the MAIPF or an assigned insurer during the prelitigation claims process. Statements made for the first time during discovery cannot form the basis of a fraudulent insurance act under MCL 500.3173a(4). In this case, it is undisputed that the attendant care and replacement service forms dated after Williamson's death were submitted in response to a discovery request and not in support of the initial claim for benefits to the MAIPF or AAA. Accordingly, the trial court erred by granting AAA's motion for summary disposition and dismissing the Estate's claims for a fraudulent insurance act under MCL 500.3173a(4).

Given our holding, we need not address the Estate's alternative arguments that AAA failed to satisfy the intent and materiality prongs for a fraudulent insurance act under MCL 500.3173a(4), or that AAA failed to plead the affirmative defense of fraud with sufficient particularity.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Kristina Robinson Garrett
/s/ Douglas B. Shapiro
/s/ Michelle M. Rick

---

[8] That is unless, as recognized in *Fashho*, 333 Mich App at 619, the insurer obtains the evidence of a fraudulent insurance act after litigation begins, but the fraud took place before the proceedings began. In that situation, the insurer would have to show, consistent with our holding, that the false statement was offered in support of the initial claim filed with the MAIPF or the assigned insurer, despite its falsity not being uncovered until mid-litigation.